BEFORE THE SECOND DIVISION, JULY 24, 1939

**No. 41848.**—Protests 942380–G, etc., of Chas. Bashwiner et al. (New York).

DALLINGER, Judge: These are suits against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on particular importations of machines. Duty was levied thereon at the rate of 27½ percent ad valorem under paragraph 372, Tariff Act of 1930, as machines not specially provided for. It is claimed that said machines are properly dutiable at the rate of 25 percent ad valorem under the provision in the same paragraph for "printing machinery (except for textiles), bookbinding machinery, and paper-box machinery."

Only two witnesses appeared herein. The first, the importer, Charles Bashwiner, testified that he was the inventor of the machines at bar, that he had

thoroughly learned the printing business and at the age of twenty-three years was placed in charge of the printing plant of the General Electric Co., one of the largest printing plants in the country; that previous to his invention of the machines at bar only two pieces of paper or cardboard could be pasted together in a single operation; that by means of one of the imported machines three pieces of paper or cardboard can be pasted together in a single operation; that all book-binding plants use machines that paste layers of materials together; that this kind of work is necessary in binding books with stiff covers; that pasting or mounting machines are used in printing establishments where advertising matter is printed; that the printing is done before the sheets are put together; that pasting and mounting machines are used in paper-box factories, the witness having had charge of a paper-box factory in Castletown, N. Y.; that in producing stiff book covers it is necessary to use a pasting or mounting machine; that this is the first importation of these particular newly invented machines; that the sole function of the said machines is pasting and mounting stiff cardboard book covers; that while a machine performing this kind of work is used in printing, paper-box making, and bookbinding establishments, such machines are chiefly used by bookbinders; that there is no individual machine known as a book-binding machine, or a paper-box machine; that in a paper-box factory various machines are used, to wit: printing presses, die-cutting presses, glueing machines, etc.; that in a bookbinding establishment various machines are also used, to wit: gathering machines, which gather different sheets together, stitching machines, which stitch the sheets together, eyeletting machines, stringing machines, pasting or mounting machines, and gold-edge machines that put gold edges on the finished book; that there are four machines identical with those involved in the instant case in this country at the present time, one in the witness' own plant in Long Island City, one in Rochester, N. Y., one in another establishment in Long Island City, and one in Brooklyn; and that he had installed all of said machines and had seen them operate.

On cross-examination the witness testified as follows:

X Q. Do you do any printing in your plant?—A. No.
X Q. Any bookbinding?—A. No.
X Q. Do you do any printing for advertising purposes?—A. No, sir.
X Q. Do any of the three establishments, other than yours, in which these machines are located, do any of those three things?—A. No, sir.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X Q. Now, your machine pastes a piece of paper on either side of that piece of cardboard?—A. That's true.
X Q. If the paper had been printed on prior to that time and then pasted on the cardboard, you say the machine then is used in the printing business?—A. Yes.
X Q. If the cardboard with the paper on it is to be cut down later or is sold to a bookbinding company and cut down later for a book cover, you say the machine is a book-binding machine?—A. That's true.

\*　　　\*　　　\*　　・\*　　　\*　　　\*　　　\*

X Q. How do you get it in the printing machinery class?—A. There are many machines used in printing establishments. This, I would say, would be printing machinery since it belongs there.
X Q. Your machine merely takes a piece of paper and pastes that paper which has printed matter on it to the piece of cardboard?—A. That's true.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X Q. In box-making plants, does your machine mark the board where it is to be folded to make the box?—A. Not the mounting machine; no.
X Q. Your mounting machine is used to paste two pieces of paper on cardboard and then after that it has to be put through a box-making machine?—A. It has to be put through a die-cutting machine.
X Q. To cut it to its size and shape to make a box out of it?—A. That's true.
X Q. In what form is the cardboard when you send it to the box maker? In sheets?—A. In sheets.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X Q. In box making you do the operation with your machine before it is sent to the die-cutting machine?—A. Yes.

X Q. But in advertising, the printing is done first and then pasted on the cardboard by your machine?—A. Yes.

X Q. And in bookbinding, if it is a cover that is to be done, you put the sheets and the cardboard through the machine to be pasted, and then cut them to the proper shape for the book cover; is that right?—A. That's true.

The second witness, Louis Roth, testified that he had been in the printing business in New York City for approximately twenty years; that he was at present employed by the Commanday-Roth Co., Inc., located at 175 Varick Street, New York City; that he was familiar with the mounting or pasting machines at bar; that he had found it necessary in conducting his business to have mounting machines; that in so-called display advertising such machines are necessary for pasting the paper and board together to get the correct thickness so that the display advertising will be rigid enough to stand up; and that he has made stiff covers in his establishment, which also required pasting and mounting machines.

At this juncture the witness produced a sample of display printing, in the production of which a mounting machine similar to the machines at bar was used, which sample was admitted in evidence as Illustrative Exhibit A. Samples of display advertising printed on paper and pasted on pieces of cardboard were then admitted in evidence as Collective Exhibit 3.

The witness then testified that in the case of Illustrative Exhibit A his company had printed a whole book, the binding being known as plastic binding; that frequently he had been in bookbinding establishments and had seen the mounting and pasting machines used therein; that he has seen other machines in bookbinding establishments, to-wit: stitching machines, threading machines, stringing machines, sewing machines, gathering machines, and stamping machines. On cross-examination he testified as follows:

X Q. Do you do any bookbinding in your plant?—A. Not in our plant.

X Q. You do do printing?—A. We do printing.

X Q. When you get a call for printed matter on cardboard you paste the already printed matter on a piece of cardboard by the use of a mounting machine, do you not?—A. We do.

X Q. The mounting machine, itself, does no printing?—A. It does no printing.

X Q. It merely pastes two papers together?—A. Paper or cardboard.

X Q. One may be printed on and one may not be printed on?—A. Correct.

X Q. You make stiff book covers which you send to bookbinding plants?—A. Correct.

X Q. You make the cover first?—A. We make the cover first.

X Q. And you also make sheets, do you not?—A. Print sheets.

X Q. And after you print the sheets and paste the cover with the printed matter on the cardboard, then you send it to the bookbinding plant to be bound; is that correct?—A. Correct.

On redirect examination the witness testified as follows:

Q. When orders come to you for advertising matter, such as Collective Illustrative Exhibit B, do you then furnish the whole business?—A. It all depends. In a lot of cases, we do. I dare say in the majority of cases we furnish everything, including the goods for printing. Sometimes, also in a lot of cases we supply the cards as well. In some cases, the paper goods may be supplied, but in most cases we supply everything.

Judge DALLINGER. In the majority of cases you do the whole thing?

The WITNESS. We do the whole thing.

By Mr. KLINGAMAN:

Q. Which line of work, would you say from your experience, uses the largest number of pasting machines?—A. Of course, I would not guarantee my statement. It would have to be my guess.

Judge DALLINGER. From your experience, which would you say?

The WITNESS. From my experience, pasting machines are used by bookbinderies probably in the majority.

By Mr. KLINGAMAN:

Q. When you say in the majority, just what do you mean by that?—A. It is quite evident, in my opinion, there are a great many more stiff covered books made than there are display material. So naturally, we would assume bookbinderies would have most of these pasting machines.

Q. Just what do you mean by in the majority, strictly speaking; that bookbinderies use more than half of those in use, or do you mean simply to state that bookbinderies use more in number?—A. I think bookbinderies use more than other trades.

Upon this record counsel for the Government in his brief filed herein lays great stress upon the testimony of the witness Bashwiner, that, in his opinion, all of the establishments where the present improved pasting and mounting machines are used do no printing or bookbinding work. However, it appears from the entire record that pasting and mounting machines as a class are chiefly employed in bookbinding plants; and the testimony of the witness Roth is that the pasting and mounting machines installed in his printing establishment make stiff book covers which he sends to bookbinders.

From the record as a whole we are satisfied that the plaintiffs have made out a *prima facie* case that the instant pasting and mounting machines are bookbinding machinery within the meaning of said paragraph 372, and as such are properly dutiable at the rate of 25 percent ad valorem under said paragraph, as alleged by the plaintiffs. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.